With the first matter on today's calendar, United States v. Brunstorff, 23-7-1-7. Mr. Kestenband. Thank you, Your Honor. May it please the Court, I'm Jeff Kestenband. I represent the appellant, Kawani Brunstorff. With the Court's permission, I have reserved three minutes for rebuttal. Yes. It is undisputed in this case that Mr. Brunstorff established extraordinary and compelling reasons for a sentence reduction. The District Court found that Mr. Brunstorff suffers from obesity and that he has a history of cigarette smoking, both of which the Court found to be COVID-19 risk factors. The Court also determined that somebody who suffers from two or more COVID-19 risk factors faces an increased risk of serious injury or illness from COVID-19. Having so found, the District Court then proceeded to consider the 3553A factors, which, of course, is the appropriate process under 3582C1A. The District Court, however, abused its discretion in considering the 3553A factors for four reasons. The first relates to my client's very young age at the time that he committed the predicate offenses in this case, as well as the old age of those offenses. The second relates to the facts in this particular case that resulted in his conviction and sentence. The third stems from the severe length of that sentence under the ACCA. And fourth, my client's overall positive record in the Bureau of Prisons for approximately 10 years. Going back to the first factor, Your Honor, Mr. Brunstorff was 16 years old at the time that he committed one of the predicate convictions and in his early 20s at the time that he committed the others. All of the convictions, moreover, were more than 20 years old. They were committed in 1994 and 1997 and 1998. At the time of his application for sentence reduction, Mr. Brunstorff was in his early 40s. How long has he been in prison? He had been in prison for almost a decade at the time he filed the application, Your Honor. He had been incarcerated since March of 2011, and he filed his application for a sentence reduction in 2020 after COVID-19 began. And the district court denied the motion in October of 2020, approximately nine and a half years since his incarceration during his 15-year sentence. So when you say that he's had all this time without convictions, 10 years of that has been he's been in prison. That's correct. And to be clear, he did have some intervening convictions as well, but they weren't of the serious type, certainly not the type that would result in the 15-year sentence that he received. They were all misdemeanors, motor vehicle, and he had one felony conviction for possession of drugs. But all of the convictions that resulted in the ACCA enhanced sentence were convictions from his teens and early 20s during the 1990s. And there had not been anything since the late 90s that could have supported the ACCA enhanced sentence that he received in 2012 based on conduct that occurred in 2011. It's important to note, I would stress the nomenclature that we use with the ACCA, where it's called the Armed Career Criminal Act, as though the conduct that someone engages in as a teenager or in their early 20s defines a career. We typically don't think of a career as being based on the sort of things that you do at that young age. But when it comes to the ACCA, that's the case. And he, of course, faced a minimum mandatory sentence of 15 years based on the 2011 conduct, which he received. So moving on to that conduct itself, I understand the district court in 2012 didn't have an option but to sentence him to less than 15 years. But he was arrested and charged based on a couple of guns that were found in his apartment. There's no allegation that he ever used those guns. There's no allegation or evidence that he ever threatened to use those guns. There's not even any evidence that he ever removed the guns from his apartment. So in essence, he faced a 15-year mandatory minimum sentence for possessing a couple of firearms in his apartment without any evidence or information of any type that he had ever used, threatened to use, or even remove those guns from his apartment. Now, the court, it didn't have discretion back in 2012 but to impose the 15-year mandatory minimum sentence, which is what it did. And at the time that Mr. Brunstorff filed his motion for a sentence reduction, he had served approximately 75% of the time that he would have been required to serve on that sentence. His discharge date from the Bureau of Prisons is June of 2024. So on the 180-month mandatory, he was incarcerated from March 2011 with a discharge date a little over 13 years later. And so having filed the motion approximately nine years, nine and a half years into that sentence, he had served about 75% of the time that he would have been required to serve. In our brief, we have cited about 20 cases where courts, both in the District of Connecticut and around the country, have granted motions for sentence reductions for defendants who have served far less than Mr. Brunstorff has served, both in terms of the total amount of time that they've served, as well as as a percentage of their overall sentence. Let me, if I can just jump in for a moment. Certainly, judges have a wide degree of discretion in ruling on these motions and different judges have ruled in different ways, but it's very, the cases are very individual and fact-specific. And with regard to the factors that you're mentioning about the arguably harsh nature of ACCA sentences and all of the things that have been going on since Mr. Brunstorff has been incarcerated and the amount of time that he served, I mean, those factors were all in front of the judge in ruling on the motion, correct? Yes, they were, Your Honor. And so I guess what I'm looking for is what, you know, if we know that the judge did in fact consider these factors, what is it that would support a finding that it was that the judge abused her discretion here? Your Honor, I see that my time is up. Should I answer your question? If you would.  Of course. Mr. Brunstorff's case is just unusual in terms of the array of factors that have to be considered and how virtually everyone supported a sentence reduction here. I certainly agree with the court that a district court has a considerable amount of discretion when ruling on these motions. But when the court looks at all the factors related to Mr. Brunstorff's situation, including the age of his convictions, his very young age, the nature of the conduct in this case, the amount of time he had served, some of the other aspects of that that I was going to get into, and I can on the rebuttal, relate to the disparate racial impact that the ACCA has and has had on Black people like Mr. Brunstorff, as well as his BOP record, which I'll address further in the rebuttal. But when looking at all of those in combination, this is one of the unusual cases where a district court has abused its discretion. Thank you, Mr. Kestenbaum. Mr. Kaplan, for the government. Good morning, Your Honor. Anthony Kaplan for the Pele United States. I represented the Pele below, both in the original proceeding as well as the habeas and then the compassionate release. The court has recently clarified that there are three conditions that need to be met for compassionate release to be granted. The first is administrative remedies have been exhausted, which is not disputed in this case. The second is whether extraordinary or compelling reasons exist for compassionate release to be granted. And the third is whether or not the Section 3553A factors have been met. In this case, I'll turn Mr. Kestenbaum went directly to that, so I will do the same. The judge here clearly in his order considered all of the filings in this case and concluded that the 3553A factors supported a finding that additional incarceration was needed to protect the society. The district court has accorded very broad discretion in assessing those factors. I understand that the appellant may disagree with the way in which those factors have been weighed in this case, but the district court has accorded discretion to consider those factors and did in this case. And just briefly addressing the three arguments, the age of Mr. Brunstorf, as Judge LaValle pointed out, Mr. Brunstorf has spent a substantial amount of time in prison. So the age is a little bit of a not not quite as relevant. The act of the robbery was committed when the defendant was 16. That is correct. However, while incarcerated, he assaulted a prison guard and a fellow inmate. I believe he was in his 20s, 26. He was released. I think he had a controlled substance, and then he was convicted of the instant offense. What is also significant, and I think was significant to Judge Shea, is even while serving time for the instant offense, Mr. Brunstorf was found with a shank, which in the context of this case is even more troubling given his prior convictions for assault in state court for assaulting the prison guard and an inmate. So I think on balance, the court did not abuse discretion in considering Mr. Brunstorf's criminal record. And in fact, consider the fact that his original conviction was, I should say, his original qualifying conviction was when he was 16. It's a continuing course of criminal conduct. And Judge Shea believed and assessed that additional prison time was warranted and the defendant that no relief was warranted. With respect to the ACCA itself, with respect to the conviction the court had in front of it, Mr. Brunstorf's arguments and considered them, I just would note while there was no evidence that Mr. Brunstorf used the firearms that were the subject of the ACCA, what brought the police to the apartment was the fact that he had, was his then girlfriend had been beaten with a, I believe, a telephone cord and an ire. And that's the basis on which the police arrived at the residence and then conducted a search warrant. So, I think, on balance, the court, district court did not abuse its broad discretion and in finding that the protection of the community warranted the defendant's continued incarceration, the denial of the compassionate release motion. So unless the court has any questions of me, I will rest on my papers. Okay, thank you very much, Mr. Kaplan. We'll hear from Mr. Kestenbaum during the three minutes of rebuttal. With respect to the severity of the ACCA, it's important to note that had Mr. Brunstorf not been ACCA eligible, even with two crimes of violence under the sentencing guidelines, his guideline range would have been 77 to 96 months. Had he not had any crimes of violence, his guideline range would have been 30 to 37 months. But using the 77 to 96 based on the two crimes of violence, that third conviction essentially took the high end of the 77 to 96 range and almost doubled it to the mandatory minimum of 180 months. So the ACCA enhanced sentence had a significant impact on Mr. Brunstorf, whose guidelines were significantly less and, of course, the statutory maximum for the charge he was convicted of is 10 years without an ACCA enhancement. The ACCA was adopted in the 1980s when there was more of a reactionary mindset to certain types of crime. It's not the type of statute that would probably be adopted today when we have more information and a more enlightened attitude about the criminal justice system, as well as the mitigating effects of youth. I have a question that's a little different. He was pro se throughout the proceedings, or did he have counsel at some point in requesting compassionate release? He filed the motion pro se, and then I was appointed to represent him and file the supporting memorandum from there on. And is your sense, more broadly speaking, that most individuals who file these motions for compassionate release are in fact, at least in Connecticut, represented by counsel eventually in connection with the motion? It's been my experience that many are, some are not. And while I can't speak about every situation, the sense I get is that the district court will make an initial assessment about the merits of the claim. And if the court feels that there might be something that requires development, it will appoint counsel. That's been my sense, both in the cases that I've been appointed in, as well as the ones where I've seen people not get counsel appointed. Okay, that's very helpful. Thank you. The ACCA, of course, as the 2018 Sentencing Commission study that's cited in my brief addressed, talks about how the ACCA has had a disparate impact on Blacks as compared to other racial groups and ethnicities. Specifically, 70.4% of ACCA sentences in 2016 were imposed on Black defendants, and they also received a higher average sentence than other racial groups and ethnicities. Going to the last factor, which is, I see my time is up. So, in light of that... I'll give you 30 seconds. Thank you, Your Honor. The last factor relates to Mr. Brunster's overall performance in the Bureau of Prisons. The record establishes that he had done much to improve himself in terms of taking courses and continuing education and vocational training. He had received a commendation for saving an inmate's life and had overall received excellent work records. I think the court considered that, but okay. Thank you very much. I would add a comment that, Mr. Kestenband, I think you've done an admirable job of doing the best that could be done to represent your client. But he should be aware that he has made your job extremely difficult by the way he has lived his life. One establishes a record and it follows one, and I find it very hard to see why it could be considered an abuse of discretion for the district court to give high importance to the protection of the public from the type of conduct that your client has shown himself to be involved in for starting out early but continuing late. And you've done a very good job for him, but he made it tough for you. Thank you. Thank you, Robert. Thank you, Mr. Kestenband. The matter is being submitted. We'll reserve decision.